1   David D. Lawrence, Esq. [State Bar No. 123039]
    Christina M. Sprenger, Esq. [State Bar No. 205105]
2   Anh N. Nguyen, Esq. [State Bar No. 253475]
    FRANSCELL, STRICKLAND, ROBERTS & LAWRENCE
3   A Professional Corporation
    500 North State College Blvd., Suite 1350
4   Orange, California 92868
    Telephone No. (714) 456-0180
5   Facsimile No. (714) 456-0181
    E-Mail: csprenger@franscell.com
6   Attorneys for Defendants,
    COUNTY OF ORANGE, SHERIFF MICHAEL CARONA and DEPUTY COSSAIRT
7
8   Michelle L. Palmer
    Deputy County Counsel
9   HALL OF ADMINISTRATION
    P.O. Box 1379
10  Santa Ana, California 92702-1379
    Telephone: (714) 834-3318
11  Facsimile: (714) 834-2359
12  E-Mail: michelle.palmer@coco.ocgov.com

13  Attorneys for Defendants,
    COUNTY OF ORANGE, SHERIFF MICHAEL S. CARONA and DEPUTY COSSAIRT
14  as to Injunctive Relief Only

15
16                    **UNITED STATES DISTRICT COURT**

17                   **CENTRAL DISTRICT OF CALIFORNIA**

18  Souhair Khatib,                    ) Case No. SACV 07-1012 DOC (MLGx)
                                       )
19          Plaintiff,                 )
                                       ) **REPLY TO PLAINTIFF'S OPPOSITION**
20      v.                             ) **TO DEFENDANTS' MOTION TO DISMISS**
                                       )
21  COUNTY OF ORANGE, a political      ) Date:  January 14, 2008
    subdivision; MICHAEL S.            ) Time:  8:30 a.m.
22  CARONA, individual and             ) Crtrm: 9D
    official capacities; BRIAN         )
23  COSSAIRT, individual and           )
    official capacities; and DOES      ) **MATTER FOR DETERMINATION BY THE**
24  1 through 10,                      ) **HONORABLE DAVID O. CARTER**
                                       )
25          Defendants.                )
    ═══════════════════════            )
26

27

28

                                 1

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES............................ 1

I.   SUMMARY OF ARGUMENTS ...................................... 1

II.  THE COURTHOUSE LOCKUP IS NOT A "PRETRIAL DETENTION
FACILITY" AS ENVISIONED BY RLUIPA ............................ 3

A.   Plaintiff's Argument That "Confinement Alone" Triggers
The Protections Of RLUIPA Is Unsupported And Contrary To The
Purpose Of The Act ......................................... 3

B.   Plaintiff Was Not A Pretrial Detainee And A "Pretrial
Detention Facility" Connotes More Than A Temporary Detention
In A Courthouse Lockup ..................................... 4

C.   Plaintiff's Reliance Upon Comments By An Orange County
Grand Jury Demonstrates That Plaintiff's Argument Is
Unsupportable .............................................. 5

III.  THE DEPRIVATION OF PLAINTIFF'S HIJAB FOR LESS THAN EIGHT
HOURS DID NOT CONSTITUTE A SUBSTANTIAL BURDEN ON HER RIGHT TO
PRACTICE RELIGION .......................................... 6

IV.  PLAINTIFF MAY NOT BRING A CLAIM FOR MONETARY DAMAGES UNDER
RLUIPA AGAINST DEFENDANTS CARONA AND COSSAIRT IN THEIR
INDIVIDUAL CAPACITIES ...................................... 9

V.   AS TO THE QUALIFIED IMMUNITY DEFENSE, PLAINTIFF HAS FAILED
TO CARRY HER BURDEN OF SHOWING THAT THE LAW WAS CLEARLY
ESTABLISHED AT THE TIME DEFENDANTS CARONA AND COSSAIRT WERE
REQUIRED TO ACT ............................................ 10

VI.  PLAINTIFF HAS FAILED TO SHOW WHY THIS COURT SHOULD CREATE A
CAUSE OF ACTION UNDER ARTICLE I, SECTION 4 OF THE CALIFORNIA
CONSTITUTION ............................................... 14

1                                                                              **Page**

2    VII.   CALIFORNIA GOVERNMENT CODE SECTION 820.2 AND 820.8

3    PROVIDE IMMUNITY FOR DEFENDANTS CARONA AND COSSAIRT .......... 14

4    VIII. PLAINTIFF FAILS TO DEMONSTRATE THAT DEFENDANTS' CONDUCT

5    WAS  SUFFICIENTLY OUTRAGEOUS TO SUSTAIN A CLAIM FOR INTENTIONAL

6    INFLICTION OF EMOTIONAL DISTRESS ........................... 18

7    IX.   PLAINTIFF HAS NO STANDING TO SEEK EQUITABLE RELIEF ...... 19

8    X.     REQUESTED RELIEF ...................................... 20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY TO OPPOSITION RE MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**

2
                                                  **Page**

3
Cases

4
Alexander v. County of Los Angeles

5
  64 F.3d 1315 (9th Cir. 1995) .................................. 11

6
Backlund v. Barnhart

7
  778 F.2d 1386 (9th Cir. 1985) ................................ 12

8
Barner v. Leeds

9
  24 Cal.4th 676 (2000) ........................................ 17

10
Behrens v. Pelletier

11
  516 U.S. 229 (1996) .......................................... 11

12
Boles v. Neet

13
  402 F.Supp.2d 1237 (D.Colo.2005) ............................. 9

14
Brown v. Department of Corrections Pennsylvania

15
  2007 WL 4322980, *16 (W.D.Pa., 2007) ......................... 9

16
Brown v. Grabowski

17
  922 F.2d 1097 (3rd Cir. 1990) ................................ 12

18
Caldwell v. Montoya

19
  10 Cal.4th 972 (1995) .................................... 16, 17

20
Cervantes v. JC Penney Co.

21
  24 Cal.3d 579 (1979) ......................................... 19

22
City of Los Angeles v. Lyons

23
  461 U.S. 95 (1983) ........................................... 19

24
Collins-Bey v. Thomas

25
  2004 WL 2381874, *1 (N.D. Ill. 2004) ......................... 8

26
Dunlap v. Losey

27
  40 Fed.Appx. 41, 43, 2002 WL 1001027, *2 (.A.6 (Mich.),2002) .. 7

28

1                                                                     **Page**

2  Gooden v. Crain

3    405 F.Supp.2d 714 ............................................. 9

4  Harlow v. Fitzgerald

5    457 U.S. 800 (1982) ......................................... 11

6  Hawkins v. Stingut

7    829 F.2d 317 (2nd Cir. 1987) ................................ 12

8  Houghton v. Smith

9    965 F.2d 1532 (9th Cir. 1992) ............................... 11

10 Hunter v. Bryant

11   502 U.S. 224 (1991) ......................................... 11

12 In re Osslo

13   51 Cal.2d 371 (1958) ........................................ 19

14 Kemmerer v. County of Fresno

15   200 Cal.App.3d 1426 (1988) .................................. 18

16 Kentucky v. Graham

17   473 U.S. 159 (1985) .......................................... 9

18 Klock v. Cain

19   813 F.Supp 1430 (CD Cal 1993) ............................... 13

20 Lipman v. Brisbane Elementary School Dist.

21   55 Cal.2d 244 (1961) ........................................ 18

22 Martinez v. City of Los Angeles

23   141 F.3d 1373 (9th Cir. 1998) ......................... *passim*

24 Mayweathers v. Terhune

25   328 F.Supp.2d 1086 (E.D. Cal. 2004) .......................... 8

26 Muhammad v. Wainwright

27   839 F.2d 1422 (11th Cir. 1987) .............................. 12

28

1

Page

Neely v. Feinstein

  50 F.3d at 1509 ......................................... 11, 12

Newby v. Pate

  2007 WL 2791455, *9 (N.D.Tex.)(N.D.Tex.,2007) ................. 7

Perez v. Frank

  433 F.Supp. 2d 955 (W.D. Wis. 2006) .......................... 7

Rapier v. Harris

  172 F.3d 999 (7th Cir. 1999) ................................. 7

Richardson v. Selsky

  5 F.3d 615 (2nd Cir. 1993) ................................. 12

Romero v. Kipsap County

  931 F.2d 624 (9th Cir. 1991) ............................... 12

Smith v. Allen

  502 F.3d 1255 (11th Cir. 2007) ........................... 9, 10

Smith v. Haley

  401 F.Supp.2d 1240 (M.D.Ala.2005) ........................... 9

Spratt v. Rhode Island Dept. Of Corrections

  482 F.3d 33 (1st Cir. 2007) ................................ 10

Standing Deer v. Carlson

  831 F.2d 1525 (9th Cir. 1987) ............................. 7, 8

Sweaney v. Ada County

  119 F.3d 1385 (9th Cir. 1997) .............................. 11

Terry v. Ohio

  392 U.S. 1 (1968) ........................................... 3

Toles v. Young

  2002 WL 32591568, *9 (W.D. Va. 2002) ........................ 8

**Page**

Trujillo v. Ontario

  428 F.Supp.2nd 1094 (CD Cal 2006) ............................ 17

Ward v. Dyke

  58 F.3d 271 (6th Cir. 1995) ................................. 12

Warsoldier v. Woodford

  418 F.3d 989, 996 (9th Cir. 2005) ............................ 8

Statutes

18 U.S.C. § 3626.............................................. 4

42 U.S.C. § 1983.............................................. 4

42 U.S.C. § 1997.............................................. 3

42 U.S.C. § 2000cc et seq................................. *passim*

42 U.S.C. § 2000cc-1(a).................................... 3, 4

42 U.S.C. § 2000cc-1(b)(1).................................. 10

California Government Code § 820.2........................ *passim*

California Government Code § 820.8........................ 2, 14

Other Authorities

California Constitution, Article I, Section 4............ 1, 2, 14

Prison Litigation Reform Act............................. *passim*

REPLY TO OPPOSITION RE MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY OF ARGUMENTS.**

Plaintiff's First Amended Complaint (hereinafter "FAC") names as Defendants the County of Orange, Sheriff Michal Carona and Sheriff's Department Captain Brian Cossairt.  The FAC sets forth five separate causes of action:

1.  42 U.S.C. § 2000cc et seq. ("RLUIPA" or "The Act");

2.  Violation of the First Amendment;

3.  Violation of California Constitution, Article I, Section 4;

4.  Intentional Infliction of Emotional Distress; and

5.  Negligence.

RLUIPA applies to persons who are "residing in or confined to an institution."  The court lockup is simply not an "institution" as contemplated by The Act.  Plaintiff's argument that "confinement alone" is enough to trigger The Act simply reads out of the analysis the requirement that a plaintiff be "residing in or confined to an institution."

The Act, like the First Amendment, requires that the government impose a "substantial burden" on the exercise of religion.  As with the requirement of confinement to an institution, Plaintiff's argument ignores the requirement that the imposition be "substantial."  Plaintiff asserts that the imposition was substantial and "completed with the forced removal of her hijab."  Plaintiff has not cited authority, nor is there authority for the proposition that requiring the removal of a

1

REPLY TO OPPOSITION RE MOTION TO DISMISS

1   head scarf for a matter of hours constitutes a "substantial

2   burden" under either RLUIPA or the First Amendment.

3      Additionally, RLUIPA which was passed by Congress under its

4   spending powers does not provide for a cause of action against

5   individuals such as Sheriff Carona and Captain Cossairt.

6      Plaintiff attempts to turn the qualified immunity analysis

7   on its head by arguing that Defendants have failed to cite case

8   law for the proposition that the alleged acts of Sheriff Carona

9   and Captain Cossairt were not prohibited by "clearly established

10  law."  Ninth Circuit authority clearly places upon Plaintiff the

11  burden of showing that the alleged unlawful practice was

12  proscribed by clearly established law at the time in question,

13  something which plaintiff has utterly failed to do.

14     Nor has Plaintiff cited any authority for the proposition

15  that California Constitution, Article I, Section 4 provides a

16  cause of action for damages.

17     Additionally, Plaintiff has failed to allege, and cannot

18  credibly allege, that Sheriff Carona and Captain Cossairt engaged

19  in any "outrageous conduct" as required for a claim of

20  intentional infliction of emotional distress.  Additionally,

21  Sheriff Carona and Captain Cossairt are entitled to immunity

22  under California Government Code §§ 820.2 and 820.8 from

23  liability for plaintiff's state law claims.

24     Finally, Plaintiff has not demonstrated the requisite

25  standing to authorize her request for equitable relief.

26     According, the FAC must be dismissed.

27  ///

28  ///

II.   **THE COURTHOUSE LOCKUP IS NOT A "PRETRIAL DETENTION FACILITY"**
      **AS ENVISIONED BY RLUIPA.**

    A.   **Plaintiff's Argument That "Confinement Alone" Triggers**
           **The Protections Of RLUIPA Is Unsupported And Contrary**
           **To The Purpose Of The Act.**

In order to invoke the protections of RLUIPA, Plaintiff must show that at the time of the alleged wrongful conduct, she was "residing in or confined to an institution."  42 U.S.C. § 2000cc-1(a).  Plaintiff does not argue that she was "residing in" an institution.  Rather, she relies upon the language of 42 U.S.C. § 1997 of the Prison Litigation Reform Act (hereinafter "PLRA") which includes "pretrial detention facility" as part of the definition for "institution".

Recognizing the absence of any authority for the proposition that a courthouse lockup is an "institution", Plaintiff argues that **"confinement alone is enough to merit protection under RLUIPA."** (Opp., 5:21-22).  In other words, Plaintiff totally ignores the requirement that she be in an "institution" and argues that a mere detention, if accompanied by some form of "confinement," triggers the protections of RLUIPA.  This argument ignores the numerous circumstances where an individual is "detained and confined" but not "institutionalized."  Indeed, under Plaintiff's argument, a criminal suspect subjected to a temporary detention under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968) who is confined to a police car for fifteen minutes would be subject to protections of RLUIPA.  Clearly, Congress did not intend RLUIPA to apply so broadly.  If it had, there would be no requirement that a plaintiff be "residing in or confined to an institution."

3

1    All that would be required is that the States not impose a

2    substantial burden upon an individual's religious practices under

3    color of law.  Of course, that was addressed long ago in 42

4    U.S.C. § 1983, i.e., that State actors not violate the

5    constitutional rights of individuals under color of law.

6        Clearly, mere confinement alone is not enough to trigger

7    RLUIPA.  Accordingly, Plaintiff cannot proceed on her First Cause

8    of Action.

9        **B.    Plaintiff Was Not A Pretrial Detainee And A "Pretrial**

10              **Detention Facility" Connotes More Than A Temporary**

11              **Detention In A Courthouse Lockup.**

12       As set forth in the moving papers, RLUIPA applies to persons

13   "residing in or confined to an institution."  42 U.S.C. § 2000cc-

14   1(a).  RLUIPA defers to the PLRA in defining "Institution," and

15   includes within this definition of institution a "pretrial

16   detention facility."  <u>See</u>, 18 U.S.C. § 3626.

17       First of all, Plaintiff was not a pretrial detainee; she was

18   not awaiting trial.  She had been convicted and sentenced.

19       The PLRA was intended to address, among other things, the

20   avalanche of frivolous lawsuits filed by inmates regarding

21   conditions of confinement.  Accordingly, the definition of

22   "institution" under the PRLA includes pretrial detention

23   facilities.  This is because detentions of inmates awaiting trial

24   can be lengthy and result in lawsuits relating to conditions of

25   confinement.  The same cannot be said of courthouse lockup

26   facilities.  Courthouse lockups are used for temporary

27

28

1   detentions.[1]   Rarely do such detentions result in "conditions of
2   confinement" lawsuits.

3      Notably, Plaintiff has failed to cite a single case under
4   RLUIPA defining a courthouse lockup as an "institution."   Indeed,
5   Plaintiff has failed to cite a single case under the PRLA
6   defining courthouse lockup as an "institution."

7      **C.**    **Plaintiff's Reliance Upon Comments By An Orange County**
8         **Grand Jury Demonstrates That Plaintiff's Argument Is**
9         **Unsupportable**.

10      Plaintiff refers to an Orange County Grand Jury Report as
11   support for her argument that a courthouse lockup is a "pretrial
12   detention facility" under RLUIPA.[2]   The fact that Plaintiff has
13   had to go to such lengths to characterize the court lockups as an
14   "institution" demonstrates just how unsupportable her position
15   is.

16      Whether the courthouse lockup is a "pretrial detention
17   facility" is a question of federal law.   A county grand jury is
18   not a law-making body of government.

19      Nor is a county grand jury an arm of county government.
20   Consequently, it does not have authority to set policies for the
21   County.

22      There is no assertion by Plaintiff, nor could Plaintiff
23   truthfully make such an argument, that the county grand jury

24  

25   [1]   The Orange County Grand Jury Report referenced in the
    Opposition papers notes that "lockups are to be used for
26   detentions not exceeding 12 hours."
27   [2] Plaintiff does not argue that the county grand jury can
    determine what an institution is for purposes of RLUIPA.
28   Plaintiff simply argues that the grand jury yeport "demonstrates

1  report was addressing RLUIPA or issues relating to religious
2  observances by the county jails.

3      Finally, even if the grand jury report had some relevance,
4  it does not support Plaintiff's position.

5      The Report states:

6          "There are basically five types of detention
7          facilities…where inmates may be detained…A COURT
8          HOLDING FACILITY IS A SECURED DETENTION FACILITY
9          LOCATED WITHIN A COURT BUILDING USED FOR THE
10         CONFINEMENT OF PERSONS SOLELY FOR THE PURPOSE OF
11         A COURT APPEARANCE FOR A PERIOD NOT TO EXCEED 12
12         HOURS."

13     The fact that a court holding facility is not intended for
14  confinement exceeding 12 hours further confirms Defendants'
15  position that courthouse lockups are not covered by The Act.  The
16  danger of depriving inmates of the right to religious exercise is
17  simply not as great in these temporary detention facilities as it
18  is in prisons and jails where inmates are awaiting trial or
19  serving sentences.  Persons in courthouse lockups are not
20  "residing in or confined to an institution."

21  **III.** **THE DEPRIVATION OF PLAINTIFF'S HIJAB FOR LESS THAN EIGHT**
22          **HOURS DID NOT CONSTITUTE A SUBSTANTIAL BURDEN ON HER RIGHT**
23          **TO PRACTICE RELIGION.**

24     In her Reply, Plaintiff refuses to recognize that "duration"
25  is, in most cases, a fundamental component in determining whether
26  an imposition on a religious exercise is "substantial."  Indeed,

27
28

that the **County** considers the courthouse holding facility
equivalent to "jail."  (Opp., 4:12-13) (emphasis added).

1  Plaintiff goes so far as to assert that the substantial burden
2  element was "completed with the forced removal of her hijab" and
3  that she was "wholly prevented [] from observing her faith."
4  (Opp., 7:17-18; 8:16-18.)

5      Numerous cases addressing short-term deprivations analogous
6  to Plaintiff's claim have recognized that the duration of the
7  denial plays a central role in determining whether there was a
8  substantial burden on the right to religious exercise.  See,
9  Dunlap v. Losey, 40 Fed.Appx. 41, 43, 2002 WL 1001027, *2 (C.A.6
10 (Mich. (C.A.6 (Mich.),2002)  (holding that the temporary
11 deprivation of an inmate's hardcover Bible did not coerce him
12 into action contrary to his beliefs and was insufficient to state
13 a claim under RLUIPA); Newby v. Pate, 2007 WL 2791455, *9
14 (N.D.Tex.)(N.D.Tex.,2007) (holding that the temporary
15 confiscation of the inmate's religious properties did not violate
16 RLUIPA); Standing Deer v. Carlson, 831 F.2d 1525 (9th Cir. 1987)
17 (holding that a ban on religious headgear while dining did not
18 violate the free exercise provision of the First Amendment);
19 Perez v. Frank, 433 F.Supp. 2d 955, 964 (W.D. Wis. 2006)
20 (recognizing that a delay in replacing an inmate's prayer oil
21 would be insufficient to support a claim that his free exercise
22 right had been violated); Rapier v. Harris, 172 F.3d 999, 1006 n.
23 4 (7th Cir. 1999) (holding that the unavailability of pork-free
24 meals on three out of 810 occasions constituted only a de minimis
25 burden on prisoner's religion).

26     Plaintiff also fails to meaningfully distinguish Standing
27 Deer which upheld the deprivation of religious headgear in a
28 dining hall notwithstanding the argument asserted by the

1   plaintiff that the headbands had special religious significance
2   for Native Americans "and that even brief interruptions in this
3   practice seriously intrude[d] upon their religious beliefs."  831
4   F.2d at 1527.

5        In support of her position, Plaintiff only cites cases
6   involving the forced removal of body hair in prison contrary to
7   the inmates' religious beliefs.  (Opp., 19:2-11) (citing
8   Warsoldier v. Woodford, 418 F.3d 989, 996 (9th Cir. 2005) (prison
9   policy required a Native American inmate to cut his hair);
10  Mayweathers v. Terhune, 328 F.Supp.2d 1086 (E.D. Cal. 2004)
11  (prison's grooming regulation forced a Muslim inmate to shave his
12  beard); Collins-Bey v. Thomas, 2004 WL 2381874, *1 (N.D. Ill.
13  2004) (prison's grooming policy prohibited a Moorish-American
14  Muslim from having long hair); Toles v. Young, 2002 WL 32591568,
15  *9 (W.D. Va. 2002) (prison's policy required a Hebrew Israelite
16  inmate to cut his hair and shave his beard before entering the
17  facility).  Cases involving the forced removal of body hair are a
18  far cry from the instant case.  For example, in Warsoldier, the
19  forced cutting of a Native American's hair involved an imposition
20  on the inmate which had implications starting long before and
21  continuing long after the temporal act of hair cutting.  Unlike
22  the removal of an article of clothing, cutting of a person's hair
23  cannot be immediately reversed by simply "putting it back on."
24  The effects last long after the initial act and, symbolically,
25  extend to a point long before the act.  Essentially, it is the
26  duration and lasting effects of the acts which distinguish
27  Plaintiff's cited cases from the instant case and most analogous
28  authorities.

1    The removal of Plaintiff's hijab in the instant case was a
2    temporary deprivation which lasted a matter of hours, after which
3    Plaintiff was returned to her *status quo*.

4    **IV.   PLAINTIFF MAY NOT BRING A CLAIM FOR MONETARY DAMAGES UNDER**
5    **RLUIPA AGAINST DEFENDANTS CARONA AND COSSAIRT IN THEIR**
6    **INDIVIDUAL CAPACITIES.**

7    Defendants contend that RLUIPA does not authorize a suit for
8    damages against an individual in his individual capacity since
9    RLUIPA was passed by Congress pursuant to its spending powers.[3]

10   Plaintiff argues that Defendants Carona and Cossairt can be
11   sued in their individual capacities since the term "government"
12   in RLUIPA includes the definition of "persons acting under color
13   of state law."  Plaintiff cites only District Court cases to
14   support her position.  The District Courts, however, are split on
15   the issue.  Indeed, many District Courts have found that RLUIPA
16   does not authorize suits for damages against individuals.  See
17   generally, Brown v. Department of Corrections Pennsylvania, 2007
18   WL 4322980, *16 (W.D.Pa., 2007); Gooden v. Crain, 405 F.Supp.2d
19   714, 723; Boles v. Neet, 402 F.Supp.2d 1237, 1241 (D.Colo.2005);
20   Smith v. Haley, 401 F.Supp.2d 1240, 1246 (M.D.Ala.2005).

21   The only Circuit decision on this issue is Smith v. Allen,
22   502 F.3d 1255 (11th Cir. 2007).  In Smith, the Eleventh Circuit
23   held that RLUIPA does not authorize a cause of action against an
24   individual in his individual capacity.  Id. at 1275.  Recognizing

25
26   _____
27   [3] Defendants do not contest the claims against Defendant Carona
     and Cossairt in their official capacities because those are not
28   claims "against the official personally, for the real party in
     interest is the [public] entity" Orange County.  Kentucky v.
     Graham, 473 U.S. 159, 165-166 (1985).

9

1  that Congress enacted RLUIPA pursuant to its spending power, the

2  court reasoned that only grant recipients, and not their

3  employees, are amenable to suit as a condition of receiving

4  funds.  Id. at 1275.  The court emphasized that "Congress cannot

5  use its spending power to subject a non-recipient of federal

6  funds, including a state official acting [in] his or her

7  individual capacity, to private liability for monetary damages."

8  Id. at 1273.  This limitation on RLUIPA was recognized by the

9  First Circuit, which stated, "[w]hereas RFRA had applied to all

10 actions by 'Government,' RLUIPA is substantially narrower in

11 scope, and [it] ... applies only to 'a program or activity [in an

12 institution] that receives Federal financial assistance.'" 42

13 U.S.C. § 2000cc-1(b)(1); Spratt v. Rhode Island Dept. Of

14 Corrections, 482 F.3d 33, 37 (1st Cir. 2007) (alteration added)

15 (alteration in original).

16     RLUIPA applies to public entities that receive federal

17 funds, not individuals who do not receive such benefits.

18 Accordingly, Plaintiff cannot sue Defendants Carona and Cossairt

19 in their individual capacities under RLUIPA.

20 **V.   AS TO THE QUALIFIED IMMUNITY DEFENSE, PLAINTIFF HAS FAILED**

21 **TO CARRY HER BURDEN OF SHOWING THAT THE LAW WAS CLEARLY**

22 **ESTABLISHED AT THE TIME DEFENDANTS CARONA AND COSSAIRT WERE**

23 **REQUIRED TO ACT.**

24     Plaintiff asserts that qualified immunity should not be

25 granted on a motion to dismiss.  Just the opposite is true.

26 Qualified immunity is an immunity from suit, not just a defense

27 to liability.  Accordingly, qualified immunity can be raised at

28

1    any stage of the proceedings.  Behrens v. Pelletier, 516 U.S.
2    229, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

3         In discussing the importance of deciding the issue of
4    qualified immunity at the earliest possible stage of litigation,
5    the United States Supreme Court in Hunter v. Bryant, 502 U.S.
6    224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), stated:

7              "...because '[t]he entitlement is an *immunity from*
8              *suit* rather than a mere defense to liability,'
9              *Mitchell v. Forsyth*, [supra], we repeatedly have
10             stressed the importance of resolving immunity
11             questions at the earliest possible stage in
12             litigation."
13   (Emphasis in original).

14        In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727,
15   73 L.Ed.2d 396 (1982), the Supreme Court stated that "until this
16   threshold immunity question is resolved, discovery should not be
17   allowed."  This is because the purpose of qualified immunity is
18   to prevent insubstantial claims from interfering with the
19   functions of public officials.  Alexander v. County of Los
20   Angeles, 64 F.3d 1315, 1319 n.2 (9th Cir. 1995) ("The primary
21   concern in analyzing qualified immunity is whether the risk of
22   monetary liability will inhibit officers in the discharge of
23   their duties.")

24        Not only must the law be clearly established regarding the
25   right allegedly violated, but it is the plaintiff's burden of
26   proving it so.  See, Sweaney v. Ada County, 119 F.3d 1385, 1388
27   (9th Cir. 1997); Neely v. Feinstein, supra, 50 F.3d at 1509;
28   Houghton v. Smith, 965 F.2d 1532, 1534 (9th Cir. 1992).  A

plaintiff is required to offer more than general conclusory allegations that defendants violated a constitutional or federal right (Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir. 1985); Neely v. Feinstein, supra) and is required to show that the particular facts of his case involved a claim of clearly established law. Backlund v. Barnhart, supra; Romero v. Kipsap County, 931 F.2d 624, 627 (9th Cir. 1991).

> In determining whether a right was clearly
> established at the time defendants acted, 'the law
> must be clear in regard to the official's
> particular actions in the particular situation.'
> [citations]

Ward v. Dyke, 58 F.3d 271, 273 (6th Cir. 1995).

A District Court decision will not ordinarily "'clearly establish' the law even of its own circuit, much less that of other circuits." Hawkins v. Stingut, 829 F.2d 317, 321 (2nd Cir. 1987); accord, Brown v. Grabowski, 922 F.2d 1097 (3rd Cir. 1990), cert. denied, 111 S. Ct. 2287 (1991); Muhammad v. Wainwright, 839 F.2d 1422, 1425 (11th Cir. 1987).  "Although district judges within a particular circuit will frequently find each other's decisions persuasive, they remain free to disagree." Hawkins, 829 F.2d at 321.

Disagreement among the District Court Judges is a strong indicator that the law was not clearly established.  Richardson v. Selsky, 5 F.3d 615, 623 (2nd Cir. 1993) ("The disparate rulings in [District Court] cases further confirm our conclusion that the issue was not clearly established within this Circuit.")

1   Plaintiff has utterly failed to carry her burden of showing
2   that clearly established law precluded Sheriff Carona and Captain
3   Cossairt from acting as alleged, i.e., precluding a detainee in a
4   court lockup from wearing a religious headscarf.  Plaintiff makes
5   an analytical error discussed repeatedly in Supreme Court
6   decisions on qualified immunity, i.e., she over-generalizes the
7   right at issue.  She merely alleges that RLUIPA had been "in
8   existence for more than 6 years" at the time of the events in
9   question and that "for years it [had] clearly established that
10  imposing a substantial burden on religious exercise is unlawful
11  under RLUIPA… ."  (Opp., 18:5-18).  Most tellingly, Plaintiff
12  states that "defendants cite *no* cases to support their argument
13  that Mrs. Khatib's right under RLUIPA to wear her hijab in
14  accordance with her religious beliefs was not clearly established
15  at the time of the violation."  (Opp., 20:2-4).  This admission
16  alone establishes the absence of clearly established law.  See,
17  Klock v. Cain, 813 F.Supp 1430, 1431 n. 5 (CD Cal 1993) (The rule
18  [clearly established law] requires that some case-law precedent
19  exist.  The lack of merit to plaintiff's motion is conceded by
20  plaintiff's own statement that, "there appears to be no case
21  directly on point to support this right.")
22      Plaintiff has failed to offer any analogous authority
23  suggesting that her First Amendment rights or rights under RLUIPA
24  were violated.  *A fortiori*, it cannot be said that the law was
25  "clearly established."  Accordingly, Defendants Carona and
26  Cossairt are entitled to qualified immunity with regard to
27  Plaintiff's First and Second Causes of Action.
28

REPLY TO OPPOSITION RE MOTION TO DISMISS

VI.   **PLAINTIFF HAS FAILED TO SHOW WHY THIS COURT SHOULD CREATE A CAUSE OF ACTION UNDER ARTICLE I, SECTION 4 OF THE CALIFORNIA CONSTITUTION.**

In response to Defendants' argument that Article I, Section 4 of the California Constitution does not authorize a cause of action for damages, Plaintiff states "*no* California court has foreclosed the **possibility** of private damages for such violations." (Opp., 20:15-17(emphasis added)).

Plaintiff cites absolutely no authority supporting such a cause of action and does not even argue why this federal court should, in the first instance, recognize a cause of action under the California Constitution.

In essence, Plaintiff has failed to state facts upon which a claim may be based.  The Third Cause of Action must be dismissed.

VII.  **CALIFORNIA GOVERNMENT CODE SECTION 820.2 AND 820.8 PROVIDE IMMUNITY FOR DEFENDANTS CARONA AND COSSAIRT.**

Plaintiff concedes that the Fourth and Fifth Causes of Action should be dismissed against the County but claims that Defendants Carona and Cossairt are not entitled to immunity since they were allegedly engaged in "operational" or "ministerial" decisions.  (Opposition, p.21 fn 16.)  Plaintiff is incorrect.

California Government Code § 820.8 establishes that public employees (Carona and Cossairt) cannot be liable on a respondeat superior basis for the acts of subordinates.  When considered in conjunction with California Government Code § 820.2 and the allegations in the Complaint, it is clear that Defendants Carona and Cossairt cannot be liable under state law (Third, Fourth and Fifth Causes of Action).

1      While Plaintiff attempts to plead around the aforementioned

2  immunities by claiming that Defendants Carona and Cossairt were

3  acting at the "operational" or "ministerial" level, it is clear

4  that neither had any personal involvement and both were acting at

5  the decisional level, thereby entitling them to immunity under §

6  820.2.

7      Nowhere in the Complaint is there an allegation that either

8  Sheriff Carona or Captain Cossairt had any personal involvement

9  with Plaintiff.  The Complaint alleges that Sheriff Carona

10  "manages and supervises the OCSD and all of its divisions,

11  including the Court Operations Division."  (FAC, ¶5).  Likewise,

12  the Complaint alleges that Captain Cossairt "manages the Court

13  Operations Division of the OCSD, which staffs and operates the

14  holding facilities at the Orange County Superior Courts." (Id. at

15  ¶6.)

16      While the Complaint alleges that a custom, practice or

17  policy of the County regarding the use of religious head

18  coverings was "implemented by the OCSD, Defendant Carona, [and]

19  Defendant Cossairt," the Complaint avoids alleging who the

20  pertinent policy-maker would be.  As an elected official, Sheriff

21  Carona is the policy maker for the Orange County Sheriff's

22  Department.  Likewise, as is clear from the FAC, Captain Cossairt

23  is at the policy making or decisional level, exercising such

24  authority over the Court Operations Division.

25      The cases cited by Plaintiff in opposition to the motion

26  support Defendants' argument.  The first is <u>Martinez v. City of</u>

27  <u>Los Angeles</u>, 141 F.3d 1373 (9th Cir. 1998).  In that case, Los

28  Angeles Police Officers were seeking discretionary immunity from

REPLY TO OPPOSITION RE MOTION TO DISMISS

state law claims arising from the Plaintiff's alleged illegal
arrest and false imprisonment.  The Ninth Circuit held that
discretionary immunity under California Government Code § 820.2
did not immunize the police officers from liability for
negligently conducting an investigation which resulted in the
arrest of the plaintiff.  Notably, however, the Court's language
indicates that the officers, regardless of rank, would be immune
with regard to their decisions to act.

> "There is no immunity "if the injury…results, not
> from the employee's exercise of discretion vested
> in him to undertake the act, but from his
> negligence in performing it after having made the
> discretionary decision to do so." [citation
> omitted] Applying this Rule, the California
> Supreme Court has held that even if a police
> officer exercises his discretion in deciding to
> investigate an automobile accident, he may be
> liable for negligently conducting that
> investigation. [citation]"

141 F.3d at 1379.

    The allegations against Sheriff Carona and Captain Cossairt
relate to their decisions to act, not the negligent performance
of ministerial acts.

    In Caldwell v. Montoya, 10 Cal.4th 972 (1995).  The
California Supreme Court held that immunity under § 820.2
precluded school board members from being liable for their
decision to fire a school superintendent.  Relying upon one of
its prior decisions, the Caldwell Court noted that:

1            "*Johnson* concluded, a "workable definition" of

2            immune discretionary acts draws the line between

3            "planning" and "operational" functions of

4            government."

5 10 Cal.4th at 981.

6    The Court went on to note:

7            "Of course, basic policy decisions entitled to

8            immunity under Section 820.2 are not limited to

9            strictly legislative or regulatory issues. ...It

10            is well-settled that the more general immunity for

11            discretionary acts also extends to fundamental

12            decisions within the executive or administrative

13            authority of the agency or official E.G. Thompson

14            v. County of Alameda, supra, 27 Cal.3rd 741, 747 –

15            748 [decision to release juvenile offender];

16            Johnson, supra, 69 Cal.2d 782, 795 [decision to

17            parole youthful offender]; Lipman, supra, 55

18            Cal.2d 224, 230 [personnel issues]."

19 Id. at 983 fn. 5.

20    Nor is Plaintiff's citation to Barner v. Leeds, 24 Cal.4th

21 676 (2000) of any assistance in resolving this issue.  Barner

22 addressed whether a public defender is entitled to discretionary

23 immunity relating to the decisions made **during the course of**

24 representation of a criminal defendant.  Likewise, Trujillo v.

25 Ontario, 428 F.Supp.2nd 1094 (CD Cal 2006) adds nothing to the

26 analysis since it arrives at the same conclusion as Martinez,

27 i.e., that a police officer is not entitled to discretionary

28

1  immunity for decisions made **during the course of** a criminal
2  investigation.

3      Plaintiff alleges no personal involvement by Defendants
4  Carona or Cossairt beyond alleged responsibility for the
5  supervision of subordinates.  The California Courts have held,
6  and have not been overruled in holding, that personnel related
7  decisions are shielded by the immunity provided under § 820.2.
8  Kemmerer v. County of Fresno, 200 Cal.App.3d 1426 (1988);
9  Martinez, supra; Lipman v. Brisbane Elementary School Dist., 55
10 Cal.2d 244, (1961).  Alternatively, if Plaintiff's allegation is
11 based upon the policy-making authority of the individual
12 Defendants, they are likewise immune under § 820.2.

13 **VIII.** **PLAINTIFF FAILS TO DEMONSTRATE THAT DEFENDANTS' CONDUCT WAS**
14       **SUFFICIENTLY OUTRAGEOUS TO SUSTAIN A CLAIM FOR INTENTIONAL**
15       **INFLICTION OF EMOTIONAL DISTRESS.**

16     As set forth in the moving papers, a necessary element of a
17 cause of action under state law for intentional infliction of
18 emotional distress is "outrageous conduct" by the Defendant.

19     The only alleged wrongful conduct of Defendants Carona and
20 Cossairt is their alleged failure to supervise and/or their
21 implementation of a policy precluding the use of religious
22 headscarfs while at the courthouse lockup.  Plaintiff has not
23 been able to cite a single case to demonstrate that she was
24 subjected to any unlawful conduct.  Given that the conduct is not
25 even demonstrably unlawful, it can hardly be said that it is
26 outrageous, i.e., so extreme as to exceed all bounds of that
27 which is usually tolerated in a civilized community.  Cervantes

28

1  v. JC Penney Co., 24 Cal.3d 579, 593 (1979).  Accordingly, the

2  Fourth Cause of Action must be dismissed.

3  **IX.   PLAINTIFF HAS NO STANDING TO SEEK EQUITABLE RELIEF.**

4      Plaintiff unsuccessfully attempts to distinguish the holding

5  in City of Los Angeles v. Lyons, 461 U.S. 95 (1983) by arguing

6  that she could face "immediate danger of irreparable injury" for

7  engaging in "entirely innocent conduct" such as failing to carry

8  a valid California Driver's License.  (Opp., 24:19.)  Plaintiff's

9  contention has no merit in light of her admission that "[i]t is

10 Plaintiff's status of being on probation that subjects her to the

11 very real threat of incarceration."  (Opp., 25:8-9.)

12     Probation is a privilege and not a right.  In re Osslo, 51

13 Cal.2d 371, 377 (1958).  Plaintiff's agreement to the terms of

14 probation put her on notice that the failure to abide by those

15 terms could subject her to possible criminal penalties for the

16 **underlying crime**.  Thus, the likelihood that Plaintiff will be

17 incarcerated in the future is no different than the plaintiff in

18 Lyons.  It depends entirely upon her own decision whether to

19 abide by the law.  Since, Plaintiff cannot demonstrate an

20 "immediate danger of irreparable injury" apart from being

21 detained for her admitted violation of law, Plaintiff has no

22 standing to seek equitable relief.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

REPLY TO OPPOSITION RE MOTION TO DISMISS

1  X.    <u>REQUESTED RELIEF</u>.

2       For the reasons set forth in the moving papers and as argued

3  herein, the FAC should be dismissed.

4                                  Respectfully submitted,

5  DATED: January 8, 2008          FRANSCELL, STRICKLAND, ROBERTS
                                        & LAWRENCE, PC
6

7

8                                  By_____
                                       DAVID D. LAWRENCE
9                                      CHRISTINA M. SPRENGER
                                       Attorneys for Defendants,
10                                     COUNTY OF ORANGE, SHERIFF
                                       MICHAEL S. CARONA and DEPUTY
11                                     COSSAIRT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        **PROOF OF SERVICE**

2 STATE OF CALIFORNIA; COUNTY OF ORANGE

3   I, Donna Adams, am employed in the aforesaid County, State
of California; I am over the age of 18 years and not a party to
4 the within action; my business address is 500 North State College
Blvd., Suite 1350, Orange, California 92868.

5

6   On January 8, 2008, I served the foregoing **REPLY TO
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the
interested parties in this action by placing a true copy thereof,
7 enclosed in a sealed envelope, addressed as follows:

8 **Hector O. Villagra, Esq.**  **Owais Qazi, Esq.**
 **Ranjana Natarajan, Esq.**  **Ellen Radovic, Esq.**
9 **ACLU FOUNDATION OF SO. CALIF.** **LAW OFFICES OF OWAIS QAZI**
 **2140 W. Chapman, Suite 209** **1785 Pomona Road, Ste. A**
10 **Orange, CA 92868**  **Corona, CA 92880**
 **Telephone:(714)450-3962** **Telephone: (951)273-0956**
11 **Facsimile:(714)450-3969** **Facsimile: (951) 537-6570**
 Attorneys for Plaintiff  Attorneys for Plaintiff
12

13 **Jennifer Mathis,Esq.**  **Michelle L. Palmer**
 **Becki F. Kieffer, Esq.**  **Deputy County Counsel**
14 **ROSS, DIXON & BELL, LLP** **HALL OF ADMINISTRATION**
 **5 Park Plaza, Ste. 1200** **P.O. Box 1379**
15 **Irvine, CA 92614-8592** **Santa Ana, California 92702-1379**
 **Telephone: (949) 622-2700** **Telephone: (714) 834-3318**
16 **Facsimile: (949) 622-2739** **Facsimile: (714) 834-2359**
 Attorneys for Plaintiff  Attorneys for Defendants Re
17          Injunctive Relief Only

18

19 ___ BY MAIL:  I am "readily familiar" with the firm's practice
of collection and processing correspondence for mailing.
20   Under that practice, it would be deposited with the U.S.
Postal Service on that same day with postage thereon fully
21   prepaid at Orange, California, in the ordinary course of
business.

22

23 _X_ (BY ELECTRONIC TRANSMISSION) I caused such document(s) to be
transmitted electronically (faxed) via telecopy **to the
24   addressee** at telecopy number listed above.

25 _X_ (Federal) I declare under penalty of perjury under
the laws of the United States of America that the
26   foregoing is true and correct.

27   Executed on January 8, 2008, at Orange, California.

28       _____
         Declarant

         21
    REPLY TO OPPOSITION RE MOTION TO DISMISS